IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 1:23-cr-10 |
| FRANCIS FORD, | The Honorable Leonie M. Brinkema |
| Defendant. | Sentencing: April 25, 2023 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The defendant, Francis Ford ("Ford"), comes before the Court for sentencing after having entered a pre-indictment plea to a two-count criminal information charging him with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2. The government has reviewed the Presentence Report (the "PSR"), which properly calculates the total offense level to be 24 and the defendant's criminal history category to be III, resulting in a Guidelines range of 63–78 months. For the reasons outlined below, the United States recommends that the Court impose a Guidelines sentence, followed by a three-year term of supervised release. Such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

**I.   RELEVANT BACKGROUND**

As recounted in the PSR and the Statement of Facts to which the defendant admitted, in February 2021, Ford and his co-conspirator Jon Fleet ("Fleet") conspired to commit armed robberies of several businesses throughout the Eastern District of Virginia and the District of Maryland. Docket Entries ("DEs") 23 ¶ 1; 26 ¶ 16. Specifically, on February 21, 2021, Ford and Fleet drove together to a Subway restaurant located in Largo, Maryland. DEs 23 ¶ 2; 26 ¶ 17.

Ford waited in Fleet's car while Fleet entered the restaurant armed with a firearm. *Id.* After Fleet had completed the robbery, Ford picked up Fleet in the car and the two fled the area together. *Id.* Two days later, on February 23, 2021, Ford and Fleet walked into a Papa John's restaurant located in Falls Church, Virginia. DEs 23 ¶ 3; 26 ¶ 18. Fleet was carrying a firearm, which he pointed at employees as he demanded that the cash register be opened. *Id.* Upon finding that the cash register would not open, Ford and Fleet had an employee walk them to the back of the restaurant. *Id.* Surveillance footage capturing the event shows the employee handing a bag with cash to Fleet, who was still holding a firearm. After Fleet took the container, the employee can be seen gesturing to Ford in a pleading fashion before walking back to the front of the store. Ford, who stayed at the back of the restaurant for several more seconds, kept his hand on his waistband as though a firearm was there. *Id.* Ford and Fleet then fled the restaurant on foot. *Id.*

Ford was not always accompanied by Fleet when Ford attempted robberies. For instance, on March 7, 2021, Ford entered the Marathon gas station located on Westphalia Road, in Upper Marlboro, Maryland, brandished a sawed-off shotgun, and ordered the store clerk to give him money. DEs 23 at 4; 26 ¶ 19. The clerk immediately dialed 911 while Ford pointed the shotgun at him through an opening in the plastic partition separating the store from the cash register area. *Id.* After several seconds, Ford fled the store on foot. *Id.*

About two weeks later, on March 14, 2021, Fleet crashed his car—which Fleet and Ford had used to flee the areas of the above-mentioned robberies—in Prince George's County, Maryland. DEs 23 at 5; 26 ¶ 20. From the scene of the car crash, law enforcement recovered the sawed-off shotgun that Ford had used when he attempted to rob the Marathon gas station on March 7, 2021. *Id.* Based on law enforcement's investigation, Ford and Fleet had modified the shotgun together.

Fleet was charged and arrested in this District pursuant to a criminal complaint on June 23, 2021. *See United States v. Jon Fleet*, 1:21-cr-192 (E.D. Va), ECF No. 1. After being indicted on ten counts relating to five different robberies, on October 19, 2021, Fleet pled guilty to two counts charging him with using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at ECF No. 27. He was later sentenced by this Court to serve 17 years in prison, the minimum term mandated by statute. *Id.* at ECF No. 46.

Ford was charged and arrested pursuant to a criminal complaint on December 14, 2022. DE 1. Shortly thereafter, on January 13, 2023, Ford entered a pre-indictment guilty plea to a criminal information charging him with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2. DEs 19–23. Sentencing is scheduled for April 25, 2023.

## II. OVERVIEW OF APPLICABLE LAW

To determine an appropriate sentence, "[a] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the [G]uidelines." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Next, "the court shall consider that range as well as other relevant factors set forth in the [G]uidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a).

Although the Guidelines are advisory and are only one of the factors listed in § 3553(a), they assist the Court by "provid[ing] certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *United States v. Booker*, 543 U.S. 200, 264

(2005) (internal quotation marks and citations omitted). Indeed, in the ordinary case, there will be a significant amount of overlap between the Guidelines range and the remaining § 3553(a) factors, because the Guidelines "reflect a rough approximation that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

For example, the Guidelines encompass the most salient aspects of "the nature and circumstances of the offense" (by establishing an offense level that incorporates aggravating or mitigating circumstances such as loss amounts, number of victims, and a defendant's role in the offense), as well as reflect "the history and characteristics of the defendant" (most notably by establishing a criminal history category based on the defendant's prior criminal record). 18 U.S.C. § 3553(a)(1). The Guidelines further help to prevent "unwarranted sentencing disparities" by ensuring that defendants who have committed similar crimes and have similar criminal records will receive roughly similar sentences, regardless of the district and courtroom in which they were sentenced. *Id.* § 3553(a)(6); *see also Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Thus, although the Guidelines are not mandatory, they remain "the starting point and the initial benchmark" in ensuring fair and just sentencing both for defendants, individually, and across multiple cases, collectively. *Gall*, 552 U.S. at 49. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260–61.

### III.  SENTENCING ANALYSIS

#### A. The PSR Properly Calculates Ford's Guidelines Range at 63 to 78 months.

Ford pled guilty to one count of Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and one count of Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a)

4

and 2. The PSR correctly calculates Ford's Base Offense Level as 20. DE 26 ¶ 30. Because Ford possessed a firearm during the commission of his crime, a 5-point enhancement applies. *Id.* ¶ 31. Pursuant to U.S.S.G. §§ 3D1.4(a), (b) and (c), the Combined Adjusted Offense Level is 27. *Id.* ¶ 45. Because Ford has accepted responsibility within the meaning of U.S.S.G. § 3E1.1(a), he is entitled to a two-level reduction, and the government has moved for the additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b). *Id.* ¶¶ 47–48. The PSR already reflects this three-level reduction. Ford's Total Offense Level is thus 24. *Id.* ¶ 49. Because Ford's criminal history results in a Criminal History Category III, the PSR correctly calculates his Guidelines range to be 63–78 months. *Id.* ¶ 99.

### B. Ford Is Not Entitled to a Mitigating Role Reduction.

Ford's counsel has objected to the PSR on the basis that Ford is entitled to a two, three, or four level decrease pursuant to § 3B1.2, which calls for a 4-level decrease where the defendant was a minimal participant, a 2-level decrease if he was a minor participant, or a 3-level decrease if his behavior falls somewhere in between the two. As the probation officer correctly concluded in the PSR's Addendum, Ford is entitled to none of these reductions. *See* DE 26 at 25.

Section 3B1.2 of the Sentencing Guidelines allows for a downward adjustment in offense level "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). The size of the adjustment is directly proportional to the participant's culpability. As the Application Notes to § 3B1.2 describe, a *minimal* participant is one who lacks "knowledge or understanding of the scope and structure of the [criminal activity] and of the activities of others." U.S.S.G. § 3B1.2 cmt. n.4. To be entitled to the reduction, "a defendant must show by a preponderance of the evidence that his role in the offense of conviction makes him substantially less culpable than the average

5

participant." *United States v. Hassan*, 742 F.3d 104, 150 (4th Cir. 2014) (quotation marks and citation omitted). The minimal participant reduction does not apply to Ford. As he admitted when he pled guilty, Ford had full knowledge that a firearm would be used during each robbery and attempted robbery—both by himself and by Fleet. *See* DEs 23 ¶ 7; 26 ¶ 22. Ford cannot now credibly argue that he did not know or understand what Fleet was doing when Ford acted as Fleet's getaway driver at the robbery of Subway and when he physically entered the Papa John's restaurant with Fleet. Thus, Ford is not a minimal participant.

Neither is Ford a *minor* participant, who is someone who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. The government does not dispute that Fleet was involved in a greater number of armed robberies than Ford[1]—after all, Fleet admitted to robbing five different businesses, whereas Ford admitted to his involvement in the armed robbery of three businesses (one of which was an attempt). However, "[t]he fact that some other accomplice may be more culpable than the defendant does not necessarily mean that the defendant's role in the offense is minor." *United States v. Garcia-Ortiz*, 657 F.3d 25, 29–30 (1st Cir. 2011); *see also United States v. Guerrero-Deleon*, 713 F. App'x 163, 166 (4th Cir. 2017) ("[A] mitigating-role reduction 'is not automatically awarded to the least culpable conspirator.'" (quoting *United States v. Hassan*, 742 F.3d 104, 150 (4th Cir. 2014))).

With regard to the robberies that he committed with Fleet, Ford knew that he was participating in an armed robbery. He specifically admitted that he knew beforehand that Fleet would use a firearm in the robberies of Subway and Papa John's. Besides, Ford attempted to rob

---

[1] Indeed, the government's sentencing recommendations for each conspirator (17 years for Fleet and between approximately five and six years for Ford) demonstrate this.

6

the Marathon gas station on his own—although Fleet waited for him in the car, Ford entered the gas station on his own, and pointed a sawed-off shotgun at a clerk. Moreover, Ford modified the sawed-off shotgun together with Fleet and shared in the proceeds of the robberies. *See* U.S.S.G. § 3B1.2 cmt. n.3(C)(i) (counseling that "the degree to which the defendant stood to benefit from the criminal activity" should be considered in determining an adjustment). Ford's "understanding of the scope, structure, and activities" of his conspiracy with Fleet indicates that his role was more than merely minor. *United States v. Reavis*, 48 F.3d 763, 769 (4th Cir. 1995); *see* U.S.S.G. § 3B1.2 cmt. n.3(C)(i) (listing as a factor to be considered "the degree to which the defendant understood the scope and structure of the criminal activity").

Because Ford is not entitled to a mitigating role reduction, the defendant's objection to the PSR should be overruled.

### C.  The § 3553(a) Factors

The Section 3553(a) factors in this case counsel in favor of imposing a sentence within the 63–78-month Guidelines range, to be followed by three years of supervised release.

The defendant conspired with Fleet to rob commercial establishments in this and a neighboring district while either he or Fleet was armed with a firearm. This is not a case of a single, isolated incident, but rather of a course of criminal conduct planned and committed over at least a month. None of the robberies or the attempted robbery that Ford committed took a notable amount of time to undertake. To be sure, the timespan of many armed robberies is short since robberies are, by their nature, designed that way by the perpetrators. Yet, while short in time, these crimes rank among the most violent and leave lifelong scars for their victims. Fortunately, no one was physically injured in any of these incidents, but the potential for violence was present at each of them. This backdrop alone warrants a term of imprisonment within the Guidelines range.

Ford's criminal history includes unlawful firearm possession, drug possession and distribution, and assault.² The defendant also has prior probation violations. Ford's counts of conviction, especially in light of his criminal history, demonstrate that he presents a danger to the public. A Guidelines sentence will serve the necessary purpose of protecting the public from him and send a message to others that there are severe repercussions for committing or conspiring to commit armed robberies.

Finally, a Guidelines sentence will not result in an unwarranted sentence disparity. Although Fleet was sentenced to 17 years in prison, his level of culpability and criminal history (which qualified him as a Career Offender) was more extensive than Ford's. The government's recommended sentence takes account Ford's level of culpability and would account for the similarities and differences between Ford and Fleet.

[Continued on next page.]

---

² As described in the PSR, the details of Ford's 2011 assault conviction are particularly troubling, and they underscore the reality of possible violence when the defendant is armed with a firearm.

## IV. CONCLUSION

The Guidelines are properly calculated in this case and appropriately reflect the considerations mandated by the 18 U.S.C. § 3553(a). For that reason, the United States respectfully recommends that the Court impose a Guidelines sentence of 63–78 months' imprisonment, followed by a three-year term of supervised release.

                                        Respectfully submitted,

                                        Jessica D. Aber
                                        United States Attorney

By:        /s/
                Cristina C. Stam
                Bibeane Metsch
                Assistant United States Attorneys
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, Virginia 22314
                Tel: (703) 299-3700
                Fax: (703) 299-3982
                Cristina.stam@usdoj.gov
                Bibeane.metsch@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I certify that on April 18, 2023, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                                          /s/
                                       Cristina C. Stam
                                       Assistant United States Attorney