IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | 1:23-CR-10 |
| v. : | |
| : | |
| FRANCIS FORD, : | |
| : | |
| Defendant. : | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS
AND APPLICATION OF THE SENTENCING GUIDELINES**

COMES NOW the Defendant, FRANCIS FORD, by and through counsel, and respectfully submits his position in regard to sentencing factors. After review of the Pre-Sentence Investigation Report submitted by the United States and United States Probation Officer, the Defense respectfully requests that this Court consider a downward departure proportional with the co-defendant's sentence and appropriate to the Defendant's role in the offense, prior criminal history, and other relevant factors.

**I.   RELEVANT BACKGROUND**

The Defendant has no dispute with the facts recounted in the PSR and Statement of Facts.

The United States correctly points out that "Ford was not always accompanied by Fleet when Ford attempted robberies."  They cite a single instance of an attempted robbery.  The Court should also take note of the Statement of Facts in Mr. Fleet's case.

*See Case 1:21-cr-00192-LMB, Document 30*.  Both Mr. Fleet and Mr. Ford have likely benefited from the Government's grace in offering plea agreements that do not encompass all potentially provable criminal conduct and mandatory minimum sentences.  However, the Court must still make its determination of the appropriate sentence with the evidence presented.

The following table summarizes the Government's evidence regarding the involvement of Jon Fleet and Francis Ford:

| Date | Victim & Location | Description |
| --- | --- | --- |
| 1/14/21 | Macy's (Springfield, VA) | Fleet entered store and brandished firearm.<br>Fled with $300.<br>Fleet admits involvement in Statement of Facts. |
| 2/12/21 | McDonald's (Alexandria, VA) | Fleet entered and robbed store.<br>Fleet claimed Ford was present.<br>Fleet admits involvement. |
| 2/17/21 | Exxon | Fleet claims he and Ford drove to Exxon.<br>Fleet claims it was Ford's idea.<br>Fleet claims Ford completed robbery. |
| 2/21/21 | Subway (Largo, MD) | Fleet entered while Ford waited in car.<br>Fleet brandished firearm and took $500.<br>Ford admits involvement in Statement of Facts. |
| 2/23/21 | Papa John's (Falls Church, VA) | Fleet walks in followed by Ford.<br>Fleet brandished firearm.<br>Ford feigns possession of firearm by reaching at waistband.<br>Fleet admits involvement in Statement of Facts. |
| 3/7/21 | Marathon (Upper Marlboro, MD) | Ford and Fleet drive together.<br>Ford walks in alone brandishing sawed-off shotgun.<br>Clerk refuses to give Ford money.<br>Ford admits involvement in Statement of Facts |
| 3/13/21 | Domino's (McLean, VA) | Fleet walks into store and brandished sawed off shotgun.<br>Fleet took approximately $386.<br>Fleet admits involvement in Statement of Facts |

Regarding the proportionality of sentences, the Court should certainly consider what the Government has already pointed out in its argument regarding Mr. Fleet: Mr. Fleet was charged with 10 counts related to various armed robberies. He was facing a potential sentence far in excess of the 17 years of mandatory minimum time (that the parties agreed to recommend) for two counts of 924(c) convictions . For the two counts to which he plead guilty, Mr. Fleet's sentencing range was 262 to 327 months. This Court imposed the mandatory minimum 17 years (204 months), a 58 month departure from the low-end of the guidelines. That sentence was jointly recommended by the parties in Mr. Fleet's case pursuant to a plea agreement.

II. ARGUMENT

(1) Overview of USSG

A sentencing court must consult the advisory sentencing guidelines and take them into account prior to sentencing. *United States v. Booker*, 542 U.S. 220, 264 (2005). A sentencing court is required to fashion a sentence that is "sufficient, but not greater than necessary" to assure the various sentencing goals are achieved. 18 U.S.C. 3553. A sentencing court must not "presume that a sentence within the applicable Guidelines range is reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). A sentencing court shall consider the various factors enumerated in Section 3553. The factors most pertinent to this case are detailed below.

**(2)  Position on the Sentencing Guidelines Calculation**

The defense maintains its position taken with the Probation Officer regarding Mr. Ford's role in the offense.

Mr. Ford should receive a 2 level decrease for his role in the offense as a minor participant pursuant to 3B1.2. There was at least one other participant - Jon Fleet - who's culpability exceeds that of Mr. Ford.  Co-Defendant Jon Fleet (1:21-CR-192-01) was substantially more culpable that Mr. Ford in that he committed more robberies that Mr. Ford, he completed each robbery committed, and the was the leader and organizer of most offenses. Specifically, Fleet committed at least 5 completed robberies (1/14 Macy's, 2/12 McDonald's, 2/21 Subway, 2/23 Papa John's, 3/13 Dominos).  And, while Mr. Ford may have conspired or aided and abetted in a number of these, and committed at least one completed and one attempted robbery, Mr. Fleet's actions and culpability still exceed that of Mr. Ford.  More importantly, it is apparent from the evidence and Mr. Fleet's history of prior robberies that he was the leader and organizer of the robberies.

It is axiomatic that the government must prove by a preponderance of evidence the applicability of a sentencing enhancement. *See, e.g., United States v. Steffen*, 741 F.3d 411, 413 (4th Cir.2013).  "The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of a particular case."  *3B1.2 Application Note (C)*.  Among considerations is "the degree to

which the defendant participated in planning or organizing the criminal activity" (3B1.2 *Note (C)(ii))*, and "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts." *Note (C)(iv)*.

**(3) The Nature and Circumstances of the Offense and the History and the Characteristics of the Defendant.**

The major tragedy of this case is that Mr. Ford committed these offenses while he was hanging by a thread, which he was later able to climb upon and begin restoring his own life.  At the time of the offenses, Mr. Ford was homeless.  He had become homeless after voluntarily leaving his relationship with his young children's mother.  He had found that she was unfaithful to him.  Years ago, Mr. Ford had been prosecuted for a violent episode against a prior significant-other when he found her cheating on him.  And, although - in this case - his heart was devastated and reeling from his discovery, he was determined not to make the same mistake again and react with violence.  So instead, he chose to leave his children's mother though he had no permanent housing for himself.

For a time being, he was able to make ends meet.  He stayed with family and friends.  But, after some time with temporary shelter, he became utterly homeless, living on the streets, and occasionally staying at overcrowded and violent men's shelters.  He often found those shelters to be too difficult to reside in, even on an overnight basis.  He

lived in fear of assault and guarded his few belongings vigilantly.  And so, he often simply lived on the street.

During that time, he was in his most desperate state.  He often drank himself into oblivion.  Either to escape the cold of the night, or the discomfort of the street, or to escape the reality of living without his children and the woman he had loved.  And, in that state, he met Jon Fleet.

Jon Fleet's own story is described by his counsel in his own Sentencing Memorandum.  It is evident that Jon Fleet was a person controlled by his own desperation, and primarily fueled by addiction.  And in that state, he recruited Francis Ford.  Francis was not a drug addict, but he was a malleable and sometimes disparate person.  The Court might note that it's approximately 30 days into Jon Fleet's 60 day crime-spree before Francis Ford evidently appears.

When asked why he participated, Mr. Ford would describe the despair of simply wanting a warm place to sleep at night, or needing the money to buy a bottle of liquor to drink himself into oblivion.  That is the benefit that Mr. Ford derived from these crimes.  Jon Fleet might let Mr. Ford sleep at Fleet's mother's home, or pay him enough to buy a bottle.  Mr. Ford could be the poster-child on this Nation's backward thinking on crime-prevention versus prosecution.

But, as it happened, during this time Mr. Ford had already begun working with the District of Columbia's resources for unhoused persons.  And, things began to

improve for Mr. Ford.  He was able to enter a stable and safe shelter.  And then was able to enter a complex where he had his own room.

During this time, he was regularly meeting with his kids after school.  He was working odd jobs and had money in his pocket.  He would sometimes take his kids out to dinner, or to ride horses, or to swim.  During these moments, he felt his full potential.  He was a father.  He was loved.  He loved his children.  And he was determined to prove to his children and to his own self that he would be that man.

But his past was close behind him.  Investigators soon located him and he gave a voluntary interview.  He admitted to his involvement.  As the case progressed, his housing application also progressed.  By the time of his arrest, he had become eligible for permanent housing in a 1-bedroom apartment.  Enough room to have his children over for the nigh every so often.

Mr. Ford grew up in rural Maryland.  His parents were blue-collar workers.  He was the oldest of his siblings.  He fondly recalls his childhood.  He had a close-knit family, and is still close to his siblings and mother.  When his father passed away from colon cancer in his 50's, Francis was in high school.  He tried to fill his father's shoes at that time, and stopped going to school in order to go to work.

Francis recalls being despondent that he was never achieving all he could, and never building his own reality.  From leaving school in the 11th grade in order to work, to working menial jobs for the next several decades.  It was probably not until Francis

felt the depth of love and confidence at being a father to his two young children that he felt his true purpose in life.

**(3) The need for the sentence imposed to serve various purposes.**

The Court is readily familiar with the goals of sentencing: the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The Defense respectfully submits that a sentence significantly below the low-end of the guidelines is far more than is necessary meet all these goals.

The defense takes the position that a sentence of one year or less will permit Mr. Ford to retain his housing voucher and perhaps leave prison and reenter the D.C. housing program.  Counsel had communicated with Mr. Ford's housing counselor's and it is not known at this time whether his voucher "window" can be extended for more than a few months.  However, it appears clear that he will need to "start from scratch" if he serves any more than 12 months incarceration.

**(3) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The Government takes the position that "a Guidelines sentence will not result in an unwarranted sentence disparity.  Although Fleet was sentenced to 17 years in prison,

his level of culpability and criminal history (which qualified him as a Career Offender) was more extensive than Ford's." His involvement in the string of robberies was more extensive. But theGovernment maintains that Mr. Ford should face a guidelines sentence even though Mr. Fleet, a Career Offender, received a downward departure of 58 months from the low-end of his recommended sentence.

Among the difficulties the Court has in this case is sorting out the benefits already granted by the Government. That analysis is a rabbit hole. It is evident that Mr. Fleet avoided multiple mandatory minimum sentences for provable armed robberies. And the Government has extended some grace in not charging Mr. Ford with crimes associated with mandatory minimum sentences.

So, the Court may simply sentence each defendant as they are. At worst, Mr. Ford should receive a sentence of 49.05 months ($204/263 = 49.05/63$) which reflects the minimum proportional sentence calculated by percentage of downward departure. At best, Mr. Ford should receive a 58 month *departure* from the recommend low-end of 63 months for an active sentence of 5 months, of which he's already served. Or, the Court may recognize the justice in imposing a sentence of 12 months or less, recognizing that it will offer Mr. Ford the best transition from incarceration to housing since it appears his housing voucher may remain active for several more months.

### III. CONCLUSION

WHEREFORE based on the foregoing reasons and any others that may appear to the Court, Mr. Ford respectfully requests the Court impose no more than 12 months active incarceration. The Defense further requests that the Court consider recommending a Bureau of Prisons designation within 200 driving miles of the Defendants residence and that he be recommended for the RDAP treatment program.

Respectfully Submitted

_____/s/_____
Ryan Campbell, Esq.
Virginia Bar No. 48157
Attorney for Defendant
King, Campbell, Poretz & Mitchell, PLLC
118 N. Alfred Street
Alexandria, Virginia 22314
Ph: 703-683-7070
Fax: 703-836-0445 rcampbell@kingcampbell.com

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2023, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will then send a notification of said filing (NEF) to the following:

Cristina Stam
Assistant United States Attorneys
United States Attorney's Office (Alexandria) 2100 Jamieson Avenue
Alexandria, Virginia 22314

_____/s/_____

Ryan Campbell, Esq.
Virginia Bar No. 48157
Attorney for Francis Ford
King, Campbell, Poretz & Mitchell, PLLC
118 N. Alfred Street
Alexandria, Virginia 22314 Ph: 703-683-7070
Fax: 703-652-6010
rcampbell@kingcampbell.com
